IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNA LYNN READY, )
)
    Plaintiff, )
v. ) CASE NO. 1:17-cv-0100-TFM
) [wo]
NANCY A. BERRY HILL,[1] )
Acting Commissioner of Social Security, )
)
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

On May 10, 2013, Ronna Lynn Ready ("Plaintiff" or "Ready") applied for a period of disability, disability insurance benefits, alleging disability beginning on June 9, 2010. (Tr. 180, 195). After the Agency denied the initial application (Tr. 81), an administrative law judge ("ALJ") held a hearing on March 17, 2015 (Tr. 33-57) and a supplemental hearing on August 25, 2015. (Tr. 58-70). The ALJ concluded that Plaintiff was not disabled. (Tr. 18-28). On December 19, 2016, the Appeals Council declined review. (Tr. 1-3). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security. ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g); 1383(c)(3). After careful scrutiny of the record and briefs, for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision.

---

1 Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. NATURE OF THE CASE

Ready seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42

---

2    DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html
3    SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.15204; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of*

---

4 For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

*Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39.  A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden.  Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4).  RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations.  *Phillips*, 357 F.3d at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.  Otherwise, the ALJ may use a vocational expert.  *Id.*  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments.  *Id*.  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing

*McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 46 years old on her alleged disability onset date and 52 when the ALJ decided Plaintiff was not disabled. (Tr. 28, 180, 195). She had a high school education and two years of college, could communicate in English, and had work experience as a receptionist and secretary. (Tr. 41, 63, 66, 198). Plaintiff alleged disability due to multiple female organ surgeries, severe pain from hemorrhagic cysts, painful scar tissue and lesions from surgery, pain from fluid filled cysts and gynecological cysts. (Tr. 199).

In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (Tr. 20-28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 9, 2010, her alleged onset date. (Tr. 20). After reviewing the medical evidence and hearing testimony, the ALJ determined that Plaintiff's migraines and abdominal pain secondary to pelvic adhesive disease were severe impairments. (Tr. 20). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. pt. 404, subpt. P. app. 1 (2017). (Tr. 21-22). The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 23-27). At step four the ALJ determined, based on testimony from a vocational expert ("VE"), that Plaintiff was able to perform her past relevant work as a receptionist. (Tr. 27, 68). Thus, the ALJ found Plaintiff was not disabled during the relevant period. (Tr. 28).

## V. MEDICAL HISTORY

In January 2008, Plaintiff presented to her treating gynecologist, Dr. Asha Voss, for complaints of pelvic pain. She was diagnosed with a hemorrhagic cyst. (Tr. 326-329). She was admitted to the hospital on January 21, 2008 to undergo an exploratory laparotomy to evaluate her pelvic pain. (Tr. 264, 324-326). Radiology reports from January 2008 show "most likely left ovarian or adnexal cystic structure." (Tr. 267). She was diagnosed with pelvic adhesive disease. (Tr. 324). On January 31, 2008, Plaintiff was readmitted for treatment of infection which included "wound debiscence and wound packing." (Tr. 323). During her one-week follow-up Plaintiff reported "having minimal pain". (Tr. 298). During her six-week follow-up Plaintiff reported no trouble. (Tr. 292). In May 2008, Plaintiff reported that she was having the same pain as before the surgery. (Tr. 288-289). She did not show up for her appointment in June 10, 2008. (Tr. 287).

In April 2010 she was seen again by Dr. Voss for complaints of pelvic pain. Dr. Voss reported that she "goes to pain management" and had surgery several years ago "with wound vac for poor healing." (Tr. 284). In December 2010 she was treated for menopausal symptoms. (Tr. 281-282). She was treated for menopausal symptoms again in March 2011 (Tr. 279-280) and the record shows telephone follow-ups in June 2011. (Tr. 278-277). At a well-visit in October 2012, Dr. Voss' records show Plaintiff weighed 220.13 and had a BMI of 36.63. (Tr. 272). Plaintiff also reported pain from prior surgeries. (Tr. 271).

In August 2011, Plaintiff was seen at Southeast Pain Management Center for "abdominal pain, left lower quadrant." (Tr. 357-359). She reported a pain score of 5 out of 10. (Tr. 357). At that time she weighed 221 pounds and 6 oz and had a BMI of 36.83. (Tr. 358). In October 2011, Plaintiff was seen by Dr. Ted Paulk with First Med of Dothan for

migraine headaches. She was prescribed Demerol, Lortab and Phenergan. (Tr. 366). She was seen in December 2011, by Dr. Roddy Cook with First Med of Dothan where weight gain was noted. (Tr. 365). In July and September of 2012, she was treated for complaints of migraines and prescribed Demerol, Lortab and Phenergan. (Tr. 365, 363). Later in March, July and August of 2013, she was treated for severe migraines and prescribed Demerol, Lortab and Phenergan. (Tr. 362, 361, 376, 377). She was again treated for severe migraines in March 2014. (Tr. 375).

In November 2011, Ms. Ready returned to the Southeast Pain Management Center for treatment of Abdominal Pain in her left lower quadrant. (Tr. 354-356). She reported a pain score of 5 out of 10. (Tr. 354). In February 2012, she returned to the Pain Center and reported difficulty falling asleep due to pain. (Tr. 352). Her pain score continued to be 5 out of 10. (Tr. 351). In May, August and November 2012, Plaintiff was again treated at the Pain Center and her pain score remained the same. (Tr. 339-350). It was noted that the medication "reasonably controlled" her pain. (Tr. 340).

In February 2013, she returned to the Pain Center. (Tr. 336-338). It was noted that she was not working but was taking care of her family at home and that the medication "allow[ed] her to function at a level which . . . [was] acceptable to her." (Tr. 336). In May 2013, she returned to the Pain Center. (Tr. 397-399). At that time, she weighed 209 pounds with a height of 63 inches and a BMI of 37.06. (Tr. 398). Plaintiff reported that her medications were controlling the pain and that she was having more good days than bad. (Tr. 397-398). She returned to the Pain Center in July 2013 and reported that her medication was no longer controlling the pain. (Tr. 390-95) She was prescribed Hydrocodone. (Tr. 392).

She reported that she is able to perform activities of daily living and that the pain improves with medication and heat. (Tr. 390). She returned to the Pain Center in August 2013, (Tr. 386-389) and reported that she wanted to change back to Percocet because the Hydrocodone did not work well and bothered her stomach. (Tr. 387). She returned in November 2013 and reported that her medications were working well. No changes were made. (Tr. 383). In May and July 2013, Plaintiff's pain score was 5 out of 10. (Tr. 397, 394). In August and November 2013, Plaintiff's pain score was 4 out of 10. (Tr. 386, 382).

On March 16, 2015, Plaintiff's treating physician, Dr. Roddy Cook, Ms. Ready's treating physician, completed a clinical assessment of pain for her. (Tr. 379-80). In that assessment, the doctor opined that Ms. Ready had pain present to such an extent as to be distracting to adequate performance of daily activities or work. (Tr. 379). Dr. Cook also opined that physical activity would greatly increase Ms. Ready's pain to such a degree as to cause distraction of tasks or total abandonment of tasks. *Id.* He also opined that Plaintiff could only lift and /or carry ten pounds occasionally and five pounds frequently. (Tr. 380). He further opined that Ms. Ready could sit two hours during an eight-hour workday and stand or walk 2 hours during an eight-hour workday. *Id.* He indicated that Plaintiff could rarely push, pull, bend or stoop and could occasionally climb, balance, reach, or perform fine or gross manipulation. *Id.* Dr. Cook also noted that Ms. Ready would likely be absent from work four days or more per month due to her impairments. *Id.*

### VI. Issues

Ready raises two issues for review. They are as follows:

1. The ALJ erred by failing to consider Ms. Ready's obesity and its effects on Ms. Ready's RFC.

2. The ALJ erred by failing to give great weight to the opinions of Ms. Ready's treating physician, Dr. Roddy Cook.

## VII. ANALYSIS

### A. The ALJ did not err in failing to consider Ms. Ready's obesity.

Plaintiff argues that the ALJ erred because he failed to specifically consider Ms. Ready's obesity and its effect on her RFC. However, Plaintiff did not allege obesity as a basis for her alleged disability. The law is clear that an ALJ is not required to address a condition when the claimant did not allege she was disabled due to the condition either when she filed her applications or at her hearing. *See Robinson v. Astrue,* 365 Fed. Appx. 993, 995 (11th Cir. 2010) citing *Pena v. Chater*, 76 F. 3d 906, 909 (8th Cir. 1996). Moreover, Plaintiff failed to prove that her weight was a severe impairment. *Id*. Indeed, only one medical professional diagnosed obesity, describing a "moderately obese body habitus." (Tr. 314).

Significantly, the Court's independent review of the record demonstrates that no medical professional attributed any functional limitations to obesity. (Tr. 263-476). *See Gary v. Astrue,* 2009 WL 3063318 at *2-3 (M.D. Ala. Sept. 22, 2009)(holding that the ALJ's failure to mention obesity or explain whether obesity caused limitations did not provide a basis for remand where the claimant failed to identify evidence that obesity caused significant limitations). Indeed, no physician elaborated on the severity or nature of Plaintiff's obesity and no physician concluded that her obesity resulted in a work-related

functional impairment. *See James v. Barnhart*, 177 F. App'x. 875, 878 n. 2 (11th Cir. 2006)(finding that the ALJ properly excluded obesity as a severe impairment where claimant did not allege limitations from obesity and the only physician to attribute Plaintiff's shortness of breath to obesity did not elaborate on its severity or conclude it was a functional impairment.). Rather, the medical record shows that Plaintiff's weight after her alleged onset date fluctuated between 190 and 221 pounds. (Tr. 283, 333, 337, 341, 345, 349, 352, 358, 365, 383, 392, 417, 426), which was less than her weight before her alleged onset date when she worked as a receptionist. (Tr. 228). Indeed, Plaintiff's 2007 and 2008 weight fluctuates between 210 and 237 pounds. (Tr. 293, 297-98, 301-02, 307, 317). Thus, the Court concludes that Plaintiff's ability to work as a receptionist while obese demonstrates that her obesity did not prevent her from performing that job. Accordingly, the Court concludes Plaintiff's argument lacks merit and substantial evidence demonstrates that the ALJ properly considered the effects of Plaintiff's obesity. *Winschel*, 631 F.3d at 1178.

B. **The ALJ did not err in failing to give great weight to the opinions of Ms. Ready's treating physician.**

Ready argues that the ALJ improperly gave little weight to Dr. Cook's opinions that Plaintiff could not work. (Doc. 12, Plaintiff's Brief at p. 7-11). Dr. Cook was Plaintiff's primary care physician. (Tr. 45). The law is well-settled; "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011). (Citations omitted). However, "good cause" to stray from the treating physician's opinion exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel,* 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. (Citations omitted). Moreover, the opinion of a non-examining physician alone can not provide "good cause" because the opinion of a non-examining physician is entitled to little weight if contrary to the opinion of the claimant's treating physician. *See Swindle v. Sullivan,* 914 F. 2d 222, 227 n.3 (11th Cir. 1990) citing *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985).

The ALJ stated that Dr. Cook's check the box form responses[5] noted Plaintiff had severe difficulty with lifting, sitting, standing, and walking. She was limited to occasional climbing, balancing, manipulation, reaching, and exposure to environmental problems; she was limited to rarely pushing, pulling, bending, stooping, operating a motor vehicle and work with or around hazardous machinery. (Tr. 25, 378-80). Also, the ALJ noted that Dr. Cook circled responses to indicate pain existed to such an extent as to be distracting from adequate performance of work activities and that physical activities greatly increased pain, and that he checked a box to indicate Plaintiff's symptoms would result in four days of absences per month. (Tr. 25, 379-80). Dr. Cook's only explanation for these limitations was "chronic pain due to fibromyalgia and migraine [headaches]." (Tr. 380).

The ALJ determined that little weight was due to Dr. Cook's form responses because

---

5 "[C]ourts have found that check-off forms. . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." *Hammersley v. Astrue*, 2009 WL 30537070 at *6 (M.D. Fla. Sept. 18, 2009) citing *Spencer v.*

these responses were overly restrictive based on the record as a whole, including Plaintiff's daily activities and Dr. Cooks own treatment notes. Further, the ALJ discredited Dr. Cook's responses because Dr. Voss's treatment notes and treatment notes from the Pain Center demonstrated Plaintiff's pain was generally controlled by conservative medication and demonstrated large gaps in treatment for pain, and normal physical examinations. (Tr. 25). Indeed, Dr. Cook commented that Plaintiff's use of Imitrex was "quite effective" for controlling her headaches. (Tr. 362, 377). As the ALJ observed, Plaintiff sought additional treatment for migraines from Dr. Cook in October 2011, July 2012, September 2012, March 2013, July 20113, August 2013 and March 2014. Dr. Cook treated Plaintiff with medication. (Tr. 361-64, 366, 375-377). This shows that Plaintiff sought additional treatment for migraines seven times over a 29-month period. Thus, as the ALJ noted, the history of headache treatment shows significant gaps that undermine Dr. Cook's suggestion that migraines resulted in disabling symptoms. (Tr. 21, 25). Moreover, Dr. Cook's physical examination notes on these occasions showed basically normal findings. (Tr. 362-366, 375, 376.)

Dr. Cook's records also noted that in March 2013, Plaintiff had injured her back and experienced pain that radiated "some" down the right leg, but did not seek any follow up treatment until May 2015, when she injured herself falling over a beach chair. (Tr. 21, 362, 475). Plaintiff reported to Dr. Cook in July 2015 that she had recovered from the May 2015 injury about a month prior and had been doing well, but felt pain again in July. (Tr. 473). In July 2015, x-rays of Plaintiff's lumbar spine showed "mild lumbar degenerative disc and

---

*Heckler,* 765 F. 2d 1090, 1094 (11th Cir. 1985).

joint disease" and "no acute bony findings." (Tr. 474). As with the visits for migraines, Dr. Cook prescribed medication to treat fibromyalgia. (Tr. 365). This Court's independent review of the record confirms that the ALJ correctly observed that the record contains no evidence of the tender points involved in diagnosing that condition. (Tr. 21).

The ALJ also found Dr. Cook's form responses inconsistent with the record as a whole based on medical records from Plaintiff's treating gynecologist, Dr. Asha Voss, from the period following Plaintiff's alleged onset date, which showed conservative treatment for menopausal symptoms, sleep issues, and follow up for a March 2011 surgery. (Tr. 21, 24, 25 272-83). Also, the ALJ noted Plaintiff's multiple visits to Southeast Pain Management Center, from August 2011 to November 2013, where Dr. John Marsella, treated Plaintiff for abdominal pain. (24, 332-59, 382-400). The ALJ further noted that Dr. Marsella's physical examinations throughout this period showed Plaintiff exhibited "no pain behaviors"; she generally reported pain as a 5 on a scale of 10; she was able to perform activities of daily living and she generally denied any myaligia, arthralgia, weakness, muscle spasms, swelling , cramping or decreased range of motion.. (Tr. 24, 333-34, 337, 340-41, 345, 348-49, 352, 355, 358, 387, 392, 398). The ALJ also noted that Dr. Marsella reported Plaintiff's medications were effective and that "[t]he patient's pain is reasonably controlled with her current medication regimen" and that "[s]he continues to function at a high level and quality of life acceptable to the patient." (Tr. 26, 332-34, 336, 340, 348, 383, 398). Finally, the ALJ noted that Plaintiff's daily activities, which included light cooking, housework, and homeschooling her son, were inconsistent with the severe limitations noted in Dr. Cook's forms. (Tr. 26, 213, 220-227). Thus, the Court concludes that treatment notes from Dr. Voss

and Dr. Marsella and evidence of Plaintiff's daily activities provide substantial evidence supporting the ALJ's determination that Dr. Cook's March 2015 check the box summations were inconsistent with the record as a whole.  *Winschel*, 631 F.3d at 1178.

### IX. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 30th day of March, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE